IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH C. MORRIS, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No. 1:21-cv-204-GLR |
| TRUIST BANK, SUCCESSOR BY MERGER TO BRANCH BANKING AND TRUST COMPANY (BB&T), *et al.*, | * * | |
| Defendants. | * | |

*  *  *  *  *  *  *  *  *  *  *  *  *  *

**ANSWER TO COMPLAINT AND COUNTERCLAIM**

Defendant Truist Bank ("Truist"), by and through its undersigned attorneys, hereby answers the Complaint filed by Plaintiffs Kenneth C. Morris, Margaret Morris Sublett, William Morris, Scott Morris, Lewis Morris, Michelle Morris Skidmore, Linda Morris and Kenneth C. Morris, Successor Trustee of The Morris Family Trust and Kenneth C. Morris, Personal Representative of the Estate of Charles R. Morris (collectively "Plaintiffs") and asserts a Counterclaim against Plaintiffs.

**ANSWER TO COMPLAINT**

**PARTIES**

1. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 1 of the Complaint and, therefore, denies same.

2. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 2 of the Complaint and, therefore, denies same.

3. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 3 of the Complaint and, therefore, denies same

4. Paragraph 4 of the Complaint states opinions and contains statements and unsupported characterizations that are conclusory in nature and, therefore, no response is required. To the extent paragraph 4 contains any factual allegations, Truist admits that Charles R. Morris owned the improved real property located at 303 136th Street, Ocean City, Maryland in Worcester County as of January 30, 2020. Truist is without sufficient knowledge and information to form a belief as to the truth of the remaining allegations of paragraph 4 of the Complaint and, therefore, denies same.

5. Truist denies the allegations contained in paragraph 5 of the Complaint.

6. Truist admits that it is formerly known as Branch Banking and Trust Company. Truist further admits that it is a wholly-owned subsidiary of Truist Financial Corporation. Truist Financial Corporation was formed by the merger of SunTrust Banks, Inc. into BB&T Corporation on December 6, 2019, the merger of SunTrust Bank Holding Company (a Florida Corporation) into BB&T Corporation on December 7, 2019, and BB&T Corporation's subsequent change of its name to Truist Financial Corporation (also on December 7, 2019). Truist also admits that Specialized Loan Servicing LLC is the current servicer of a certain loan made by Branch Banking and Trust Company to Charles R. Morris dated December 9, 2011. To the extent not admitted, Truist denies the remaining allegations in paragraph 6 of the Complaint.

7. Truist admits that the certain loan made by Branch Banking and Trust Company to Charles R. Morris dated December 9, 2011 is secured by a deed of trust on the improved real property located at 303 136th Street, Ocean City, Maryland. The remaining allegation in paragraph

7 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation.

**"FACTS"**

8. The first sentence in paragraph 8 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. The remaining allegations in paragraph 8 requests Truist to admit or deny certain language set forth in the "Trust" attached as Exhibit A to the Complaint. Truist declines to do so because the Trust speaks for itself. To the extent paragraph 8 misquotes, mischaracterizes, or misinterprets the Trust, Truist denies same.

9. Paragraph 9 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, paragraph 9 requests Truist to admit or deny certain language set forth in the "Trust" attached as Exhibit A to the Complaint. Truist declines to do so because the Trust speaks for itself. To the extent paragraph 9 misquotes, mischaracterizes, or misinterprets the Trust, Truist denies same.

10. Paragraph 10 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, paragraph 10 requests Truist to admit or deny certain language set forth in the "Deed" attached as Exhibit B to the Complaint. Truist declines to do so because the Deed speaks for itself. To the extent paragraph 10 misquotes, mischaracterizes, or misinterprets the Deed, Truist denies same.

11. Paragraph 11 requests Truist to admit or deny certain language set forth in the "Trust" attached as Exhibit A to the Complaint. Truist declines to do so because the Trust speaks for itself. To the extent paragraph 11 misquotes, mischaracterizes, or misinterprets the Trust, Truist denies same.

12. Paragraph 12 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, paragraph 12 requests Truist to admit or deny certain language set forth in the "Transfer Deed" attached as Exhibit C to the Complaint. Truist declines to do so because the Transfer Deed speaks for itself. To the extent paragraph 12 misquotes, mischaracterizes, or misinterprets the Deed, Truist denies same.

13. Truist admits the allegations in paragraph 13 of the Complaint.

14. Truist admits the allegations in paragraph 14 of the Complaint.

15. Truist admits the allegations in paragraph 15 of the Complaint.

16. Truist admits the allegations in paragraph 16 of the Complaint.

17. Truist admits the allegations in paragraph 17 of the Complaint.

18. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 18 of the Complaint and, therefore, denies same.

19. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 19 of the Complaint and, therefore, denies same.

20. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 20 of the Complaint and, therefore, denies same.

21. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 21 of the Complaint and, therefore, denies same.

**COUNT I**
**(Vacate and Set Aside Deed of Trust)**

22. Truist adopts and incorporates by reference their responses to the allegations contained in paragraphs 1 through 21 of the Complaint.

23. Paragraph 23 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied.

24. Paragraph 24 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied.

25. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 25 of the Complaint and, therefore, denies same.

26. The first sentence in paragraph 26 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied. As to the second sentence in paragraph 26, Truist is without sufficient knowledge and information to form a belief as to the truth of that allegation and, therefore, denies same.

27. Paragraph 27 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied.

28. Paragraph 28 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied.

29. Paragraph 29 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied.

30. Truist denies the allegations in paragraph 30 of the Complaint.

**COUNT II**
**(Trespass to Land)**

31. Truist adopts and incorporates by reference their responses to the allegations contained in paragraphs 1 through 30 of the Complaint.

32. Truist denies the allegations in paragraph 32 of the Complaint.

33. Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 33 of the Complaint and, therefore, denies same.

34. Truist admits receiving the "First Notice Letter" attached as Exhibit E to the Complaint. To the extent paragraph 34 requests Truist to admit or deny the contents or substance of the First Notice Letter, Truist declines to do so because the First Notice Letter speaks for itself. To the extent paragraph 34 misquotes, mischaracterizes, or misinterprets the First Notice Letter, Truist denies same. Truist denies the remaining allegations in paragraph 34 of the Complaint.

35. Truist admits receiving the "First Notice Letter" attached as Exhibit E to the Complaint. To the extent paragraph 35 requests Truist to admit or deny the contents of the response to the First Notice Letter attached as Exhibit F to the Complaint, Truist declines to do so because the document speaks for itself. To the extent paragraph 35 misquotes, mischaracterizes, or misinterprets the contents of Exhibit F, Truist denies same. Truist denies the remaining allegations in paragraph 35 of the Complaint.

36. Truist admits receiving the "Second Notice Letter" attached as Exhibit G to the Complaint. To the extent paragraph 36 requests Truist to admit or deny the contents or substance of the Second Notice Letter, Truist declines to do so because the Second Notice Letter speaks for itself. To the extent paragraph 36 misquotes, mischaracterizes, or misinterprets the Second Notice Letter, Truist denies same. Truist denies the remaining allegations in paragraph 36 of the Complaint.

37. Truist denies the allegations in paragraph 37 of the Complaint.

**COUNT III**
**(Possession of Property)**

38. Truist adopts and incorporates by reference their responses to the allegations contained in paragraphs 1 through 37 of the Complaint.

39. Paragraph 39 of the Complaint asserts a legal conclusion and thus, Truist is under no obligation to admit or deny the allegation. To the extent a further response is required, the allegation is denied.

40. Truist denies the allegations in paragraph 40 of the Complaint.

41. Paragraph 41 requests Truist to admit or deny certain language set forth in a "Notice of Default and Notice to Foreclose", attached as Exhibit H to the Complaint and a letter dated October 20, 2020, attached as Exhibit I to the Complaint. Truist declines to do so because these documents speak for themselves. To the extent paragraph 41 misquotes, mischaracterizes, or misinterprets either or both of these documents, Truist denies same. To the extent a further response is required, Truist is without sufficient knowledge and information to form a belief as to the truth of the allegations of paragraph 41 and, therefore, denies same.

42. Truist denies the allegations in paragraph 42 of the Complaint.

43. Truist denies the allegations in paragraph 43 of the Complaint.

**AFFIRMATIVE DEFENSES**

1. The Complaint fails to state a claim upon which relief can be granted against Truist. Truist is a holder in due course of the Note alleged in paragraph 14 of the Complaint.

2. Plaintiffs' claims are barred by the doctrine of unclean hands. The proceeds of the Note alleged in paragraph 9 of the Complaint were used to payoff and satisfy a prior loan that was obtained by Charles R. Morris, in his capacity at Trustee for the Trust, and that was secured by a

deed of trust on the improved real property located at 303 136th Street, Ocean City, Maryland. Under these circumstances, Plaintiffs are not entitled to set aside the Deed of Trust securing the Note alleged in paragraph 14 of the Complaint unless the prior loan and the deed of trust securing that loan are re-instated. Otherwise, the Trust and Plaintiffs will be unjustly enriched by obtaining the subject property free and clear of all liens as a result of the unclean hands of Charles R. Morris.

3. Plaintiffs have not suffered any actual damages or financial loss as a result of Truist's alleged conduct.

4. Plaintiffs' claims are barred, in whole or in part, by the applicable three-year statute of limitations in as much as Plaintiffs' claims arise from events that occurred in 2011 and were matters of public record.

5. Any injury or damage alleged by Plaintiffs was the proximate result of acts or omissions by third parties—namely Charles R. Morris—over which Truist had not control.

6. Plaintiff failed to mitigate their alleged damages by allowing a default of the Note alleged in paragraph 14 of the Complaint.

7. Truist reserves the right to assert additional defenses as more information is learned during the course of discovery.

WHEREFORE, having responded to the Complaint filed by Plaintiffs, Defendant Truist Bank requests that the Complaint be dismissed with prejudice and that it be awarded costs and attorneys' fees and such other relief deemed appropriate by the Court.

## COUNTERCLAIM

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Kenneth C. Morris, Margaret Morris Sublett, William Morris, Scott Morris, Lewis Morris, Michelle Morris Skidmore, Linda Morris are alleged beneficiaries under "The Morris Family Trust" which is attached as Exhibit A to the Complaint.

2. On information and belief, Plaintiff Kenneth C. Morris is also the Successor Trustee of The Morris Family Trust as well as Personal Representative of the Estate of Charles R. Morris.

3. Truist is a regional bank that was formerly known as Branch Banking and Trust Company.

4. This Court has subject matter jurisdiction over this controversy as complete diversity of citizenship exists between the parties and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

5. Venue is proper in the U.S. District Court for the District of Maryland pursuant to 28 U.S.C. § 1391 (b)(3) as a substantial part of the events or omissions giving rise to the claim occurred within the district.

### STATEMENT OF FACTS

6. On July 1, 1996, Charles R. Morris ("Mr. Morris") created "The Morris Family Trust" and named himself "Trustee." As the Trustee of The Morris Family Trust, Mr. Morris was authorized with certain powers including, *inter alia*, the power "to borrow, mortgage, pledge, . . . grant, assign, convey, bargain, transfer, exchange, and in any manner conditionally or absolutely to dispose of all or any part of the Trust, whenever and as often as he may deem it advisable or proper so to do" and the power " to execute, acknowledge and deliver any and all instruments in writing, and to

do any and all matters and things necessary, required or advisable to be done in connection with the performance of his duties hereunder."

7. Consistent with the powers authorized by The Morris Family Trust, on or about September 17, 2009, Mr. Morris, in his capacity as Trustee, obtained a loan from BB&T n/k/a Truist in the principal amount of $150,000 for the benefit of The Morris Family Trust ("September 17th Loan") and secured the loan through a deed of trust on the improved real property located at 303 136th Street, Ocean City, Maryland (the "Property"), which, at the time of the transaction, was owned by The Morris Family Trust ("September 17th DOT").

8. Consistent with the powers authorized by The Morris Family Trust, on or about December 9, 2011, Mr. Morris, in his capacity as Trustee, conveyed the Property to himself individually, obtained a loan in his individual capacity from BB&T n/k/a Truist in the principal amount of $139,700 (December 9th Loan") and used the proceeds of that loan to payoff the balance owed by The Morris Family Trust on the September 17th Loan. As a result of the payoff, the September 17th DOT was released and a new deed of trust that secured the December 9th Loan was recorded ("December 9th DOT").

9. Upon information and belief, Plaintiffs knew or should have known of the September 17th Loan. Also upon information and belief, Plaintiffs accepted the benefits from that loan.

10. Upon information and belief, Mr. Morris died in January 2020, and payments on the December 9th Loan were made through March 2020, at which time the loan went into default.

11. Truist has no adequate remedy at law and requires the equitable powers of this Court.

**COUNT 1**
**(Equitable Subrogation)**

12. Truist adopts and incorporates by reference the allegations contained in paragraphs 1 through 11 of the Counterclaim.

13. Proceeds from the December 9th Loan in the amount of $135,744.55, obtained by Mr. Morris in his individual capacity, were used to payoff and release the September 17th DOT.

14. Under these facts and circumstances, Truist is equitably entitled to be subrogated to the same security interest and position previously held by the September 17th DOT to the extent of the amount of the payoff.

15. Plaintiffs would not be prejudiced by such equitable subrogation as their interests was already encumbered by the September 17th DOT.

WHEREFORE, Truist Bank requests that this Court enter an Order (a) declaring that the December 9th DOT is equitably subrogated to the lien position, date and security interest of the September 17th DOT, to the extent of the payoff; (b) declaring that Plaintiffs' interest in the Property is subject to the lien of the December 9th DOT to the extent of the payoff; (c) permitting Truist Bank to record a certified copy of such Order in the Land Records, indexed in the name of all parties herein; and (d) for all such other and further relief as the Court deems fair and just.

**COUNT II**
**(Constructive Trust/Unjust Enrichment)**

16. Truist adopts and incorporates by reference the allegations contained in paragraphs 1 through 15 of the Counterclaim.

17. The December 9th Loan was provided upon the condition that it would be secured with a viable first lien on the entire fee simple interest in the Property through the December 9th DOT.

18. Truist conferred a benefit onto Plaintiffs by causing the payoff and release of the September 17th DOT against the Property.

19. Upon information and belief, Plaintiffs knew of or should have appreciated the benefits of the December 9th Loan.

20. Plaintiffs accepted and retained the benefits conferred upon them by the December 9th DOT. The September 17th DOT remain released from the Property.

21. Under such circumstances, it would be inequitable for Plaintiffs to retain the benefit of the Property free and clear of Truist's lien.

WHEREFORE, Truist Bank requests that this Court enter an Order (a) establishing and declaring an equitable lien and/or constructive trust, the corpus of which is the Property, for the benefit of Truist Bank, *nunc pro tunc* to December 9, 2011; coextensive with the terms of the December 9th DOT; and (b) permitting Truist Bank to record a certified copy of such Order in the Land Records, indexed in the name of all parties herein; and (c) for all such other and further relief.

Respectfully submitted,

*/s/ Brian L. Moffet*

Brian L. Moffet (Fed. Bar No. 13821)
Michael B. Brown (Fed. Bar No. 19641)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
bmoffet@milesstockbridge.com
mbbrown@milesstockbridge.com

*Attorneys for Defendant Truist Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via this Court's CM/ECF electronic filing system.

*/s/ Brian L. Moffet*
Brian L. Moffet